UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK JOSEPH CAMINO,

                         Plaintiff,

      -vs-                      **No. 1:13-CV-00626 (MAT)**
                                         **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.

---

**I.   Introduction**

Represented by counsel, Mark Joseph Camino ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

**II.   Procedural History**

The record reveals that on October 23, 2009, plaintiff protectively filed an application for DIB and SSI, with an amended alleged onset date of November 24, 2009. Plaintiff alleged disability due to hepatitis C, high blood pressure, bipolar disorder, post-traumatic stress disorder ("PTSD"), degenerative

disc disease, post-laminectomy syndrome of the cervical spine, and cervicalgia. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge Nancy Gregg Pasiecznik ("the ALJ") on June 17, 2011. The ALJ issued an unfavorable decision on May 29, 2012. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Evidence**

    **A.    Testimonial Evidence**

Plaintiff, who was 52 years old at the time of the hearing, testified that his last full-time job was in 2005 in a fiberglass shop, and that he quit this job because he "couldn't take the fumes anymore." T. 54. Prior to that, plaintiff worked at various jobs for a tire company, which jobs involved standing and walking all day and lifting up to approximately 80 pounds.

Plaintiff testified that he was incarcerated for four years from 2005 through 2009, after being convicted for assault with a deadly weapon in an incident involving his then-wife. At the time of the hearing, plaintiff was working 20 hours per week at a halfway house where he had resided after his incarceration. This job involved intake of ex-offenders, completion of progress reports and daily logs, driving ex-offenders to appointments, and inventorying and ordering food. The job required standing, walking, and sitting, but no significant lifting. Plaintiff testified that he had an "inability to concentrate during the day" at this part-

2

time job, and that he would work four hours a day and then take a "brief nap for a couple of hours." T. 63. According to plaintiff, he "just [did not] think [he] could do it for 40 hours." T. 68.

Plaintiff testified that he had been diagnosed with bipolar disorder, and that he suffered anxiety attacks, feelings of loneliness, and depression, but no periods of mania. He testified that he had trouble dealing with people in "certain situations," and that he "like[d] to keep [his exposure to people] to the bare minimum." T. 69. Plaintiff testified that he suffered from PTSD, secondary to abuse he experienced at the age of 10 or 12. Plaintiff testified that, as a result of his PTSD, he had difficulty trusting people, and suffered "illusions," dreams, and nightmares. T. 71. Plaintiff took medication to treat those symptoms. According to plaintiff, with medication his "outbursts" were controlled; he stated, "I do get angry but I tend to walk away today." T. 73. He testified that he "had a couple . . . suicide attempts," prior to November 2009. T. 72-73. According to plaintiff, he had panic attacks "[a] couple of times a week," which lasted 10-15 minutes each. T. 74. Plaintiff also stated that he had had problems with substance abuse, including abuse of alcohol and marijuana, but that he was in recovery.

Plaintiff testified that after a course of treatment, his hepatitis C was controlled. He stated that he had two surgeries on his neck in July 2005, and testified that he was currently

3

experiencing a lack of range of motion in his neck, and pain radiating down to his legs. Plaintiff testified that he could walk and stand for a half hour at a time, sit for an hour, lift 20-25 pounds, push and pull with no limitation, bend at the waist, touch his toes, and reach over his head. He testified that he did household chores, but was "limited" and had to "take numerous breaks," and that he could bathe and dress himself. T. 80. Plaintiff testified that his medications helped with his conditions, with minimal side effects.

Vocational expert ("VE") Timothy Janikowski testified that plaintiff's past jobs at a tire company ranged from light exertional, semi-skilled work to heavy exertional, semi-skilled work, and that plaintiff performed these jobs as they were normally performed in the national economy.

### B. Medical Evidence

In association with his parole requirements, plaintiff treated from approximately November 2009 through April 2011 at Spectrum Human Services. On initial evaluation, plaintiff was assessed as having moderate anxiety and tension and mild depressive mood, and it was noted that his most recent suicidal ideation occurred four years prior. Social worker Susan Catti noted a stable presentation/status from November 2009 through March 2010, also noting alternately minimal or moderate progress toward goals, which included developing social supports, "attain[ing] SSI," and

4

exploring job training options. T. 418; see T. 398-423. Plaintiff's treatment primarily revolved around his reports of past substance abuse. In March 2010, it was noted that plaintiff was "eager to learn [a] new skill to be employable," and that he "appear[ed] to be ready for job training/school or work placement." T. 427.

On April 20, 2010, nurse practitioner Gerald Frisicaro completed a "medical statement concerning bipolar disorder and related conditions for Social Security disability claim," noting that he began treating plaintiff in January 2010. NP Frisicaro opined that plaintiff had marked limitations in activities of daily living ("ADLs") and marked difficulties in maintaining social functioning, and that deficiencies in concentration, persistence, or pace and repeated episodes of deterioration were "present." T. 430-31. NP Frisicaro noted various other marked impairments, including limitations in memory, concentration, and social functioning. NP Frisicaro also opined that plaintiff had various "moderate" limitations, and noted only one area in which he believed plaintiff to be not significantly impaired. NP Frisicaro submitted another medical statement in May 2011, in which he found only moderate limitations in ADLs, but otherwise continued to find similar limitations as described in his April 2010 evaluation.

Treatment notes from Dr. Conrad Williams from May 2010 through January 2011 indicated normal physical examinations, with the exception of a limited range of motion and tenderness in the neck,

5

apparently associated with a past work-related injury.[1] In January 2011, plaintiff tested positive for benzodiazepines. Because plaintiff did not have a prescription for this drug, plaintiff was discharged from treatment and given a list of pain management and chemical dependency providers.

Plaintiff treated with chiropractor Anthony Amabile from approximately April 2010 through May 2011. Plaintiff reported neck and back pain stemming from his 1995 work-related injury. Dr. Amabile completed a cervical spine residual functional capacity ("RFC") assessment in May 2011, opining that plaintiff's pain and other symptoms constantly interfered with attention and concentration, and stating that plaintiff was incapable of even low-stress jobs due to pain. According to Dr. Amabile, plaintiff could lift no more than 10 pounds and could sit for 30 minutes and stand for 10 minutes in an eight-hour workday. Dr. Amabile also opined that plaintiff could never look down with his neck, hold his head in a static position, or climb ladders; that he could rarely look up with his neck, twist, stoop, or crunch/squat; and that he could occasionally turn his head right or left and climb stairs. Dr. Amabile declined to answer remaining questions about whether plaintiff could be accommodated by periods of walking, shifting

---

[1] These notes indicate a work-related injury date of July 25, 2010, which is obviously erroneous. It appears from the remainder of the evidence that plaintiff sustained a work-related injury in 1995 and had two cervical surgeries shortly thereafter.

positions, or unscheduled breaks, simply stating repeatedly that plaintiff was "unable to work." T. 514. According to Dr. Amabile, plaintiff's condition was "likely to produce 'good days' and 'bad days,'" and plaintiff would miss more than four days per month as a result of his condition.

Dr. Samuel Balderman completed a consulting internal medicine examination in February 2010. T. 324-27. Plaintiff's physical exam was normal. Dr. Balderman opined that plaintiff "should be careful in food preparation jobs because of hepatitis C," that plaintiff had mild limitations in kneeling and climbing, mild limitations in frequent changes with position of the head, and mild limitation in pushing and pulling with the right shoulder due to previous surgery. T. 327.

Dr. Thomas Ryan, Ph.D., completed a consulting psychiatric evaluation in February 2010. T. 328-31. Plaintiff reported that he had worked at a tire company until 2005 and had worked there for 16 years. He stated that he was in regular treatment for psychiatric and substance abuse problems, and that he had never been hospitalized for psychiatric issues. Plaintiff reported PTSD flashbacks and characterized himself as depressed, irritable, and socially withdrawn, but stated that he had not had suicidal thoughts recently. He reported panic attacks "every couple of months." T. 329. He reported being imprisoned for second degree kidnapping with release to a three-year parole in October 2009. He

also reported substance abuse but stated that he rehabilitated in prison. Plaintiff stated that he was able to dress, bathe, and groom himself, perform routine household chores, saw friends and family occasionally, and liked to read, watch television, and listen to the radio.

Plaintiff's mental status examination was normal, except that he exhibited poor insight and judgment. Dr. Ryan opined that plaintiff could "follow and understand simple instructions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks and perform complex tasks independently," but that plaintiff was moderately impaired in making adequate decisions, relating with others, and dealing with stress. T.330.

Dr. Hillary Tzetzo completed a psychiatric review technique form in March 2010. T. 332-45. Dr. Tzetzo found that plaintiff suffered from impairments due to anxiety and substance abuse, which did not meet or medically equal any listed impairment. Dr. Tzetzo opined that plaintiff had mild restrictions in ADLs, mild difficulties in maintaining concentration, persistence, or pace, moderate difficulties maintaining social functioning, and no repeated episodes of deterioration of extended duration. Dr. Tzetzo noted no presence of "C" criteria of the listings. Dr. Tzetzo opined that plaintiff "should be able to understand and follow work directions in a work setting (with low public contact), maintain

attention for work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work related decisions in a work setting (with low public contact)[.]" T. 344.

Dr. Tzetzo also completed a mental RFC assessment, which found that plaintiff was not significantly limited in understanding and memory. In the area of sustained concentration and persistence, Dr. Tzetzo found that plaintiff was moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, making simple work-related decisions, and completing a normal workday or week without interruptions from psychological symptoms, but otherwise not significantly limited. In the area of social interaction, Dr. Tzetzo found that plaintiff was moderately limited in interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, but otherwise not significantly limited. Finally, in the area of adaptation, Dr. Tzetzo found that plaintiff was moderately limited in responding appropriately to changes in the work setting and setting realistic goals or making plans independently of others, but otherwise not significantly limited.

**IV. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating

disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2011. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 24, 2009, the amended alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: status post cervical discectomy and fusion at C5-C6 in 1994; cervicalgia; depression; bipolar disorder by diagnosis, although plaintiff denied mania; and anxiety. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and that he was specifically able to: lift, carry, push, and pull up to 25 pounds occasionally and ten pounds frequently; sit for two hours at a time and up to eight hours total in an eight-hour workday, with normal breaks; and stand and/or walk for about six hours total in an eight-hour workday, with normal breaks. The ALJ further found that because of plaintiff's nonexertional mental impairments, he should avoid working with the general public more than frequently. At step four, the ALJ found that plaintiff was able to perform his past relevant work as a bead builder, as that work is performed in the national economy. The ALJ also determined, at step five, that

considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ relied on the Medical-Vocational Guidelines ("the grids") in determining that plaintiff could perform work despite his nonexertional impairments.

**V.   Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ improperly weighed the medical opinions and substituted her own judgment for that of the medical sources, and that the ALJ failed to develop the record.

**A.   Weight Given to Medical Opinions**

**1.   Dr. Amabile's Opinion**

Plaintiff argues that the ALJ erred by not giving weight to the opinion of Dr. Amabile, plaintiff's treating chiropractor. Although a chiropractor's report may be used to show the severity of any impairment and how it affects the claimant's ability to work, a chiropractor is not an "acceptable medical source" under

11

the regulations and therefore cannot provide a medical opinion. See 20 C.F.R. § 404.1513; Hall v. Astrue, 677 F. Supp. 2d 617, 630 (W.D.N.Y. 2009). Plaintiff, recognizing that this renders the treating physician rule inapplicable to Dr. Amabile's opinion (see Ashcraft v. Comm'r of Soc. Sec., 2008 WL 2967512, *8 (N.D.N.Y. July 28, 2008)), argues that the ALJ should have at least given Dr. Amabile's opinion "some" weight and that the failure to do so was error and indicates that the ALJ's RFC assessment was not based on substantial evidence.

The Court finds that the ALJ's failure to accord weight to Dr. Amabile's opinion is supported by substantial evidence, because Dr. Amabile's opinion is inconsistent with the medical record as a whole as well as with plaintiff's testimony regarding his work activities. Dr. Amabile found significant restrictions in plaintiff's ability to do work, stating repeatedly that plaintiff was *completely unable* to work. According to Dr. Amabile, plaintiff could lift no more than 10 pounds, sit for no more than 30 minutes, and stand for no more than 10 minutes in an eight-hour workday. Dr. Amabile also opined that no possible accommodation, for example by allowing shifting positions or providing scheduled breaks, would allow plaintiff the ability to do *any* work.

Dr. Amabile's opinion conflicts with plaintiff's own testimony that he currently worked 20 hours per week, for pay, at a job as a case aide with a halfway house. That job required plaintiff to

12

alternately stand, walk, and sit, inventory items, and drive residents to and from appointments. Plaintiff also testified that he was able to walk and stand for a half hour at a time, sit for an hour, lift 20-25 pounds, push and pull with no limitation, bend at the waist, touch his toes, and reach over his head. Plaintiff's testimony alone is therefore enough to squarely contradict Dr. Amabile's restrictive RFC assessment.

Substantial medical evidence also contradicts Dr. Amabile's assessment. Dr. Balderman, a consulting physician, found that plaintiff had only mild limitations in kneeling and climbing, mild limitations in frequent changes with positions of the head, and mild pushing and pulling limitations secondary to plaintiff's 1994 work-related injury. Dr. Williams, plaintiff's treating physician, also consistently found normal physical examinations, with the exception of limited range of motion and tenderness in the neck. Considering this evidence from a treating and a consulting physician, the ALJ had no duty to afford any additional weight to the opinion of plaintiff's chiropractor, who was an "other source" and not an acceptable medical source under the regulations.

The ALJ did not specifically discuss Dr. Amabile's opinion in her decision. However, the ALJ noted that she considered all of the record evidence, and the decision contains a lengthy discussion of plaintiff's treatment and consulting examinations. See T. 24-37. Assuming without deciding that the ALJ erred in failing to

explicitly address Dr. Amabile's opinion, such error would be harmless because consideration of the opinion would not have changed the outcome of the case, given the substantial evidence supporting the ALJ's RFC finding. See Jaghamin v. Comm'r of Soc. Sec., 2013 WL 129061, *7 (N.D.N.Y. Mar. 28, 2013) (finding harmless error where ALJ failed to "'reference, discuss or consider' the records or opinion of [plaintiff's] chiropractor"); Vanbuskirk v. Astrue, 2009 WL 4067646, *10 (W.D.N.Y. Nov. 20, 2009) (in rejecting plaintiff's argument that ALJ failed to properly consider chiropractor's opinion, noting that "the Second Circuit does not require the ALJ to 'mention every item of testimony' in his decision or explain his consideration of particular evidence") (quoting Monguer v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## 2. Dr. Ryan's and Dr. Tzetzo's Opinions

Plaintiff argues that the ALJ "rejected" the opinions of Drs. Ryan and Tzetzo when she formulated her RFC finding. The ALJ gave "significant" weight to Dr. Ryan's opinion. T. 33-34. The ALJ also gave weight to the portions of Dr. Tzetzo's opinion where Dr. Tzetzo found no significant limitations, but found that Dr. Tzetzo's opinions as to moderate limitations in social functioning were not supported by medical records or the mental status findings of Dr. Ryan. Therefore, contrary to plaintiff's argument, the ALJ did not simply discard Dr. Tzetzo's findings of moderate limitations and substitute her own medical judgment;

instead, she substituted the medical findings of Dr. Ryan as more consistent with the substantial record evidence. Dr. Ryan found that plaintiff was moderately impaired in making adequate decisions, relating with others, and dealing with stress. These findings were adequately incorporated into the ALJ's RFC assessment, which found that plaintiff should more than frequently avoid working with the general public. Thus, the Court finds that the ALJ did not impermissibly substitute her own medical judgment for that of Dr. Tzetzo, but rather relied upon the findings of Dr. Ryan, who was also an acceptable medical source upon which the ALJ was entitled to rely. See <u>Gunter v. Comm'r of Soc. Sec.</u>, 361 F. App'x 197, 200 (2d Cir. 2010) (noting that the ALJ is "entitled to credit the opinions of consulting physicians," and that "contradictions in the medical record are for the ALJ to resolve").

**B. ALJ's Duty to Develop the Record**

Plaintiff, who was represented by counsel at the hearing level and continues to be represented, contends that the ALJ failed to develop the record because she did not obtain any additional medical evidence between the time of the hearing, on June 17, 2011, and her decision, on May 29, 2012. Plaintiff's counsel did not request to keep the record open at the hearing, nor did plaintiff's counsel submit any additional medical records to the ALJ beyond the date of the hearing. Plaintiff does not argue that the ALJ failed to properly develop the record for the time period prior to

plaintiff's disability application, but rather, that the ALJ failed to develop the record for the time period between the hearing date and the decision date.

The regulations require an ALJ to develop the record by obtaining a "complete medical history for at least the 12 months preceding the month in which [a claimant] file[s] [an] application." 20 C.F.R. § 404.1512(d). "Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) (internal citations omitted). Moreover, where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records. Martinez-Paulino v. Astrue, 2012 WL 3564140, *14 (S.D.N.Y. Aug. 20, 2012) ("The record thus contained sufficient evidence to make a disability determination, and the ALJ was under no obligation to seek additional treatment records. Therefore, the ALJ properly satisfied his duty to develop the record."); Valoy v. Barnhart, 2004 WL 439424, *7 (S.D.N.Y. Mar. 9, 2004) ("While the ALJ must supplement the record through his own initiatives when the record is incomplete or inadequate, this burden does not attach when the record is ample.").

In this case, the record contained treatment records from as early as 2003 up through the time of the hearing, and the medical

evidence gave a complete picture of plaintiff's condition. Because the ALJ had an ample record from which to make a determination, she had no duty to obtain additional medical evidence beyond the date of the hearing.

**VI. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 13) is granted and plaintiff's cross-motion (Doc. 14) is denied. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    September 4, 2015
             Rochester, New York.